UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TYLER D. WILLIAMS,

      Petitioner,

      v.                                                CAUSE NO. 3:25cv680 DRL-SJF

WARDEN,

      Respondent.

OPINION AND ORDER

Tyler D. Williams, a prisoner without a lawyer, filed a habeas petition challenging the disciplinary decision (WCC-25-4-2613) at the Westville Correctional Facility in which a disciplinary hearing officer (DHO) found him guilty of counterfeiting documents in violation of Indiana Department of Correction Offense 230. Following a hearing, he was sanctioned with a loss of 180 days earned credit time.

Mr. Williams argues that he is entitled to habeas relief because the administrative record lacks sufficient evidence to support a finding of guilt.

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

Departmental policy defines Offense 230 as "[c]ounterfeiting, forging, or unauthorized reproduction or possession of any document, article, identification, money, passes, security or official paper." ECF 12-12 at 6. The Merriam-Webster dictionary defines "counterfeit" as "to imitate or feign especially with intent to deceive."

The administrative record contains a conduct report in which a correctional officer represents as follows:

> A review of GTL messages show that [Mr. Williams and his mother] have been corresponding back and forth concerning Holy Cross Notre Dame assignments. In the correspondence, it was evidence that Mr. Williams was having his mother do his homework assignments for him. In the documented messages, you will find where he asks his mother to write essays for him and to answer questions, provide summaries of books and chapter assignments for him. The documents are being presented to Holy Cross as works completed by [Mr. Williams]. This is a violation of disciplinary code 230 as these documents are not documents that Williams was authorized to be in possession of while assigned to the educational program.

ECF 12-1. Stated otherwise, Mr. Williams was charged with asking his mother to do his homework assignments and then submitting her work as his own.

The administrative record contains an abundance of evidence to support these allegations, including direct messages, emails, mail, and telephone conversations between Mr. Williams and his mother. ECF 12-12. For example, on July 24, 2024, Mr. Williams messaged his mother as follows:

> Hey could you send me an essay on what is an argument by walter brueggeman and william t cavanaugh in their books, respectively "sabbath as resistance" and "being consumed."
>
> I need an argument that they both make in their books that agree with one another. Maybe try the "form a unique these using (author & book) and (author & book) based on a shared argument made by both authors.

> Or something like that. You'll probably have to rephrase it but you know what I'm saying.

*Id.* at 28.

As another example, on November 18, 2024, he messaged his mother as follows:

> Here's the essay stuff
>
> First one --- according to charles wheelan's book "Naked Money" what are the pros and cons of the gold standard?
>
> This is the one that I need essays combined by integrating the following three works, create an original these that combines and is supported by elements from each work.
>
> Work 1 – "The political economy of food aid in the era of agricultural biotechnology" by Jennifer Clapp
>
> Work 2 – "Why do we overeat? By Margaret Mead
>
> Work 3 – "toward a psychosociology of contemporary food consumption" by Roland Barthes.

*Id.* at 20. Though the court is unable to locate responses to these specific messages, the log clearly shows that Mr. Williams' mother responded with full essays on other occasions apparently with the assistance of artificial intelligence. *Id.* at 1-19, 37-38. The administrative record also shows that she mailed a complete four-page essay on Books I and II of Plato's Republic. *Id.* at 46-50.

The court has little difficulty in concluding that the administrative record contains some evidence that Mr. Williams submitted homework prepared by his mother as his own as charged in the conduct report. A closer call is whether the misconduct described in the conduct report sufficiently alleges a violation of Offense 230. It seems instinctive

3

that the primary targets of the offense would be the counterfeiting of financial instruments or the forgery of official governmental documents, not academic dishonesty. Nevertheless, federal courts should generally defer to a state official's interpretation of state law, *Crawford v. Littlejohn*, 963 F.3d 681, 683 (7th Cir. 2020), and the use of Offense 230 to punish academic dishonesty is not so unreasonable as to warrant an exception. Therefore, the claim that the administrative record lacked sufficient evidence is not a basis for habeas relief.

Mr. Williams next argues that he is entitled to habeas relief because the hearing officer demonstrated improper bias by leaving the hearing room during the hearing and by saying upon his return, "I was advised that there was sufficient grounds to render a guilty verdict." ECF 1 at 2. Mr. Williams contends that the hearing officer's actions demonstrate that the finding of guilt was rendered by another individual. In his administrative appeal, Mr. Williams specified that the hearing officer spoke with his supervisor and further alleged that the hearing officer had not yet reviewed any evidence.[1] ECF 12-2 at 2-3. The Warden responds that the hearing officer's statement suggests that he sought clarification from his supervisor about the law or departmental policy without any indication that the supervisor was involved in Mr. Williams'

---

[1] The court discounts Mr. Williams' allegation that the hearing officer did not review the evidence before issuing his decision because there is no indication that this information would have been within Mr. Williams' personal knowledge. Though Mr. Williams may have observed the hearing officer's actions in the hearing room, there is no indication that he had personal knowledge of what the hearing officer did prior to the hearing or what the hearing officer did when he left the room in the middle of the hearing.

misconduct or the investigation. According to the Warden, such actions would not amount to impermissible bias.

"Due process forbids officials who are directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation thereof, from serving on the board hearing the charge." *Piggie v. Cotton*, 342 F.3d 660, 667 (7th Cir. 2003) (cleaned up). But in the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Id.* at 666.

Here, the court finds *Prude v. Meli*, 76 F.4th 648 (7th Cir. 2023), to be instructive. There, the prisoner asserted that the hearing officer in a prison disciplinary proceeding allowed his supervisor, who participated in the investigation of the underlying incident of misconduct, to predetermine the outcome of the disciplinary hearing, and the district court entered summary judgment against the prisoner. *Id.* at 653-56. On appeal, the Seventh Circuit reversed reasoning that the presence of improper bias depends on the level of the decisionmaker's involvement in the investigation. *Id.* at 557-59. The appellate court found that the record contained evidence showing the supervisor's direct involvement in the investigation. *Id.* at 658. The record also contained evidence that the hearing officer's verdict and sanctions were preordained by the supervisor, including a remark from the hearing officer that his "hands" were "tied" with respect to sanctions and another remark that the supervisor was particularly angry at the inmate. *Id.* at 658-59. As a result, the appellate court reversed the entry of summary judgment. *Id.* at 659.

This case is distinguishable from *Prude* in numerous respects. First and foremost, there is no indication that the supervisor was personally involved in the investigation or in the underlying misconduct. Next, there is no indication that the disciplinary decision was preordained by either the hearing officer or the supervisor; had it been decided before the hearing, an impromptu conference during the hearing would have been unnecessary. Nor is there enough evidence to meaningfully suggest that the supervisor dictated a particular outcome to the hearing officer. Instead, given the specific phrasing of the hearing officer's comment and given that the administrative record overwhelmingly supports the alleged facts, it appears that the hearing officer sought his supervisor's advice on whether the factual allegations were sufficient to support a violation under Offense 230, an issue of policy interpretation. Though such mid-hearing conferences might not be the best practice, it does not strike the court as meaningfully different from a judge consulting a colleague about a thorny legal issue before entering a final ruling in a bench trial or from a jury submitting a question to clarify an instruction to the trial court during deliberations. Consequently, the claim of improper bias is not a basis for habeas relief.

Additionally, Mr. Williams argues that he is entitled to habeas relief because he did not receive adequate assistance from a lay advocate. He contends that he would have argued that he was authorized to possess the materials provided by his mother if he had had assistance from a lay advocate. "[D]ue process [does] not require that the prisoner be appointed a lay advocate, unless an illiterate inmate is involved or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the

evidence necessary for an adequate comprehension of the case." *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992).

The administrative record reflects that Mr. Williams received a lay advocate for this disciplinary hearing, which Mr. Williams does not address. ECF 12-4. However, even assuming that he did not receive a lay advocate, Mr. William's filings and his administrative appeal demonstrate his literacy and his ability to understand the charges and the evidence in this case. ECF 1, ECF 12-10; ECF 14. Consequently, Mr. Williams was not constitutionally entitled to any assistance from a lay advocate. Therefore, the argument that he did not receive adequate assistance from a lay advocate is not a basis for habeas relief.

Because Mr. Williams has not asserted a valid claim for habeas relief, the habeas petition is denied. If Mr. Williams wants to appeal this decision, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009).

For these reasons, the court:

(1) DENIES the habeas corpus petition (ECF 1); and

(2) DIRECTS the clerk to enter judgment and close this case.

SO ORDERED.

July 6, 2026                                     *s/ Damon R. Leichty*
                                                 Judge, United States District Court